MANTON–GAULIN MFG. CO. v. DAIRY MACHINERY & CONSTRUCTION CO., Inc.

(District Court, D. Connecticut. December 14, 1916.)

No. 1384.

1. PATENTS ⬤=328—VALIDITY AND INFRINGEMENT—MACHINE FOR HOMOGENIZING MILK.

The Gaulin patent, No. 756,953, for an apparatus for intimately mixing milk or other liquids, was not anticipated, and is of a pioneer character, and entitled to a liberal construction, the machine being the first to successfully homogenize milk; also *held* infringed.

2. PATENTS ⬤=238—INFRINGEMENT—CHANGE OF FORM.

The impairment of the function of a part of a patented structure by omitting a portion will not avoid infringement; nor will a mere change in form, where the principle of operation is preserved and appropriated.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 376; Dec. Dig. ⬤=238.]

3. PATENTS ⬤=312(3)—DEFENSE OF INVENTION BY ANOTHER—SUFFICIENCY OF EVIDENCE.

The defense that another than the patentee was the original inventor of a patented structure must be established beyond any reasonable doubt, and not merely by a fair preponderance of the evidence.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 548, 549; Dec. Dig. ⬤=312(3).]

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Manton-Gaulin Manufacturing Company against the Dairy Machinery & Construction Company, Incorporated. On final hearing. Decree for complainant.

Frederick P. Fish, and J. L. Stackpole, both of Boston, Mass., for plaintiff.

Henry D. Williams and Livingston Gifford, both of New York City, for defendant.

THOMAS, District Judge. This is the usual bill in equity, charging the defendant with infringement of letters patent No. 756,953, issued April 12, 1904, to Auguste Gaulin, of Paris, France, for certain alleged new and useful improvements in system for intimately mixing milk, although in fact the invention of the patent has for its object, as is stated in the specification:

"An improved apparatus for intimately mixing milk and other liquids more or less resembling it by means of the action produced by the passage of liquids more or less heterogeneous under considerable pressure through very small orifices."

The plaintiff is a Maine corporation engaged in the manufacture of machines under the protection of the patent in suit, and it holds the title to it by licenses and assignments which have been put in evidence, subject to certain rights of payment and contingent reversion to the patentee.

The defendant is a Connecticut corporation, which manufactures machines at Derby, in this district, and which, as the plaintiff charges, contains and embodies the invention recited in the second claim of the patent in suit, which is as follows:

"In a machine of the class described, co-operating elements having squeezing surfaces, means to yieldingly hold the elements in contact and means to force the milk between the surfaces, substantially as described."

[1] Prior to the filing of the bill of complaint herein, the defendant had succeeded to the business of a New Jersey corporation, the Dairy Machinery & Construction Company, doing business in Connecticut, and which had been the defendant in a suit by the plaintiff upon the same patent in this district, in which it was held by Judge Martin that this second claim was valid and infringed by the defendant's apparatus involved in that case. Manton-Gaulin Mfg. Co. v. Dairy Machinery & Construction Co. (D. C.) 203 Fed. 516. The Dairy Machinery & Construction Company had, however, been dissolved before the entry of a decree, and no technical judgment was entered against it.

Although Judge Martin's decision is not res adjudicata, nevertheless a due regard for the orderly administration of justice requires that I should follow that decision, unless the instant case presents essentially different evidence. The defendant's machine in that suit was, in some respects, different from the one now charged to be an infringement, and a principal question herein involved is whether the apparatus which the defendant now uses, and which is referred to in the evidence as "defendant's device No. 1," is so different in form and operation from that used by the defendant in the former suit, as to escape

the charge of infringement. This defense of infringement is now mainly supported by certain patents to Mathieu Julien, which were in evidence in the former cause, the gist of the defendant's contention being now, as in the former case, that the Julien patents deprived Gaulin of the quality of a pioneer inventor, and therefore the patent in suit is to be strictly construed, and, as the defendant's device No. 1 does not have "means for yieldingly holding the elements in contact," there is no infringement. The patents relied upon are as follows:

(1) French patent No. 220,446, of March 26, 1892, for a machine for intimately mixing liquid substances.

(2) British patent No. 22,115, of December 2, 1892, entitled a process for enriching milk and producing cream and butter, presenting generally a plurality of pumps arranged to pump into a single pipe.

(3) British patent No. 23,637, of November 9, 1898, for a process for treating butter and restoring it to fresh condition. While apparatus is also mentioned in the title of the patent, the apparatus is excluded from the claims, which are wholly for the process.

(4) British patent No. 14,840, of August 2, 1893, entitled "Apparatus for Effecting the Intimate Mixture of Liquids, Semi-Liquids, or Liquified Matters," in which the drawings are identical with those of the process patent No. 22,115, and the description of the apparatus very much the same.

There has also been introduced in evidence quite an amount of fact testimony, which was not in the former suit, showing that in 1899 and 1900 homogenized milk was produced as a commercial product in Paris and elsewhere in France by passing the milk through a piston valve and homogenizing devices made and constructed as shown in the Julien patents in evidence. The purpose of this additional defense was to show that Gaulin, the patentee, was not the original inventor of the machine patented by him, but that it was actually invented by Julien, and that Julien disclosed the invention to Gaulin.

Judge Martin sustained the patent in suit as a pioneer patent for homogenizing milk, or, in other words, for the breaking up of the butter globules in milk, and he supported himself in this result by the assertion, which with the evidence before him was, in my opinion, clearly justified, that, while different machines had been invented prior to the Gaulin patent for pulverizing and mixing liquids of different consistency, some by beating, some by mixing, and others by being forced under pressure through orifices, there was no other patent or known process adapted to the complete breaking of all the globules of butter fat in milk, and that the special object of the Gaulin patent was to break up all the globules, so that there would be no separation in the milk thereafter, putting the milk in such condition that practically every part of it is exactly alike, and that when in that condition the flavor of the milk is improved, and, if sterilized and sealed, it will be kept in good condition for long periods of time, and that a process that does not break up all the globules of butter fat will not accomplish the result desired.

The specification of the patent does not use the word "homogenizing," and so far as appears from the record that word was practically unknown in the art before the invention of Gaulin, and came into use only as a result of his invention; in other words, Gaulin, by this in-

vention, created the art of homogenizing.   Gaulin in his specification, after stating that:

"The present invention has for its object an improved apparatus for intimate-ly mixing milk and other liquids more or less resembling it by means of the action produced by the passage of liquids more or less heterogeneous under considerable pressure through very small orifices"

—then goes on to say that:

"Apparatuses have been constructed for intimately mixing fatty liquids, and these have been used for the treatment of milk.   I have myself construct-ed such apparatuses."

This was undoubtedly a reference to Gaulin's earlier French patent, No. 295,596, dated December 23, 1899, the machine of which mixed the liquids by passing them under pressure through small holes, but which failed to "homogenize," because the holes, being substantially round, were necessarily so large that most of the fat globules passed through the holes without coming in contact with the walls of the holes and were not broken.

Gaulin further states in his specification that:

"Experience has shown that none of these apparatuses has produced the required result in the treatment of milk"

—a statement which would seem to be borne out by the evidence.   The reason why the prior attempts at "homogenizing" were unsuccessful is pointed out in the specification of the patent, page 1; lines 27 to 40, as follows:

"With some of them all the butter globules are not invariably pulverized, as is necessary, which causes the milk not to keep and, moreover, acquire a disagreeable taste.   In other machines in passing through the pulverizing orifice the butter globules are not all attacked, because it is only at the sur-face of the jet of milk which is forced into these orifices that there is really contact with the walls of the orifices, and the center particles of the jet flowing through the length of the said orifices resume their original shape on escape from the apparatus.   If it is the butter portion, it again becomes globular."

And the purpose of the invention as conceived by Gaulin is stated in the subsequent lines of the specification as follows:

"My invention comprises an apparatus whereby the object in view is attain-ed.   One of the important points of my invention, for which I seek letters patent, consists in causing the liquid to flow not only through invariable ori-fices, but also between adjustable surfaces so arranged as to be adaptable ex-actly one against the other and maintained pressed elastically and strongly one against the other.   It results from the action of these surfaces upon the globules and other separate parts of the liquid that there is a complete break-ing up and an intimate intermixture of these parts, whereas the passage of the liquid alone through invariable orifices, however fine they may be, only gives an incomplete incorporation.   In the case of milk, for example, this much more energetic action of the surfaces pressed one against the other is explain-ed by the fact that the solid or pasty globules (fat, casein, etc.) are obliged to force their passage between the said surfaces and cannot pass except by opening them.   They are therefore necessarily flattened, crushed, and torn by these surfaces, which tend constantly to close upon them.   By means of this novel system in the case of which we are speaking I am able to obtain treated milk exempt from any bad taste without recourse to any special pre-caution—such as the silvering of the tubes, etc.—whereas up to now milk

treated always possesses a disagreeable flavor, which according to my experiments results from the incomplete mixing of the various elements."

In the machines of the prior art, the orifices which are referred to in the part of the specification just quoted, were invariably round and therefore comparatively enormous in cross-section, so that the fat globules passed through the middle of them unbroken; and the essential characteristics of the invention as conceived by the patentee are pointed out later on in the specification as:

"The employment of surfaces for mixing pressed elastically one against the other, whatsoever be their forms or dimensions and whatsoever their actuation with regard to the other parts."

Taking into account the testimony of Davies and Gaulin, and the other evidence in the case, I am clear, as was Judge Martin, that the prior patents relied upon by this defendant cannot be given the force contended for without a reconstruction of them in the light of the invention in suit, that the patent in suit must be regarded as a pioneer patent, that Gaulin in fact constructed the first machine for successfully homogenizing milk, that his invention is to be regarded as one of a pioneer character, and that the mechanical functions performed by his machines are, as a whole, entirely new. If this be the case, the plaintiff is entitled to a very liberal construction of the claims of the patent, and all subsequent machines which employ substantially the same means to accomplish the same result must be regarded as infringements, although the subsequent machines may contain improvements in the separate mechanisms which go to make up the machine. Morley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715.

Judge Martin found that the defendant's machine in the prior suit accomplished the same result as does the machine of the patent in suit, and by substantially the same means, to wit, squeezing surfaces held closely in contact by pressure devices, and by substantially the same mode of operation, and I am convinced that the defendant's machine No. 1 is merely a modification of the defendant's machine which was before Judge Martin. In both machines the liquid is homogenized by being forced between the surfaces of discs held closely, but elastically, together exactly in accordance with the principle of the invention of the patent in suit. Although the defendant in its machine No. 1 has, as compared with the old machine, reduced the number of discs from 12 to 5 for a 400-gallon per hour machine, or to three for a 200-gallon per hour machine, it has nevertheless increased the size of each disc, and has modified the holding device to get the increased pressure on these devices due to the increased area of the discs and other parts which are exposed to the pressure of the liquid; in other words, the changes made by the defendant in its present machine have simply diminished the differences which are found between the infringing machine in the former suit and the machine of the patent in suit. The defendant, by employing a number of discs, provided more squeezing surfaces between which the milk is forced than there are in the machine of the patent in suit; but that I do not regard as a matter of

very great importance, for the reason that each of the squeezing surfaces of the defendant's machine, viz. the faces of the discs between which the liquid is forced, acts upon the film of milk, passing between it and an adjacent surface, in exactly the same way and with exactly the same result as does each of the surfaces, viz. that of the valve base and its seat in the machine of the patent in suit.

[2] Clearly, the mere interposition of squeezing surfaces in the defendant's machine is not a substantial difference, but one purely formal; and, if it is, it is none the less an infringement. The law is well settled that infringement is not avoided by dividing an integral element of a patented machine into distinct parts so long as the function and operation remain substantially the same; and the same rule applies as to the joinder of two elements into one integral part accomplishing the purpose of both, and no more, so long as the same results are accomplished. The impairment of the function of a part of a patented structure by omitting a portion will not avoid infringement, nor will a mere change in form, where the principle of operation is preserved and appropriated. Winans v. Denmead, 15 How. 330, 342, 14 L. Ed. 717; Nathan v. Howard, 75 C. C. A. 97, 143 Fed. 889, and numerous cases there cited.

Moreover, the defendant's spindle acts automatically in exactly the same way as does the spring of the patent in suit. As the pressure in the defendant's machine increases, the spindle has an increasing yield, thus permitting the squeezing discs to separate further apart; and as the pressure of the liquid in defendant's machine decreases, the spindle has a decreasing yield, thus forcing together more closely the squeezing discs; and there is no difference in function or mode of operation between the defendant's steel spindle and the spring of the patent in suit. Mathematically and mechanically they must be considered as equivalents.

[3] Furthermore, I am satisfied that the fact testimony introduced at great length for the purpose of showing that it was Julien, and not Gaulin, who was the original inventor of the machine, does not come within the rule that is required for this kind of testimony. The courts have uniformly and consistently held that such testimony must establish beyond any reasonable doubt, and not by a fair preponderance of the evidence, the defense that the invention of the patent in suit was suggested to the patentee by some other person, and that unless it is so established it should be unhesitatingly rejected. Such a defense cannot be supported, as are ordinary issues in civil cases, by a mere preponderance of the evidence, but must go to the extent of being absolutely clear, unequivocal and convincing. The law on this subject is very fully stated by Judge Putnam in Eastern Paper Bag Co. v. Continental Paper Bag Co. (C. C.) 142 Fed. 479, 500. But, beyond that, I am not convinced that the defendant has sustained this defense by even a preponderance of the evidence. Gaulin clearly and without any instruction from Julien or any one else understood the invention of squeezing surfaces held strongly, but elastically, together, between which the milk passed in such a thin film that the fat globules were

broken, and this is the substance and essential feature of the patent in suit.

Let there be a decree for an injunction, an accounting, and a reference to a master.

---

⬤▷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes