## LINE MATERIAL CO. v. BRADY ELECTRIC & MFG. CO.

(District Court, D. Connecticut. May 14, 1924.)

No. 1645.

1. **Patents ⊜62—Oral evidence to prove anticipation must be clear and satisfactory.**

   Oral evidence to prove prior discovery, and thereby overcome presumption of novelty from granting of patent, must be clear and satisfactory.

2. **Patents ⊜328—930,527, for automatically adjustable strain insulator fixtures, held valid and infringed.**

   Burge patent, No. 930,527, for automatically adjustable strain insulator fixtures for attachment to houses, held not anticipated, but valid and infringed.

3. **Patents ⊜66—That combination of existing patents might accomplish same purpose held not to constitute anticipation.**

   That existing patents might by some manipulation or alteration accomplish a similar purpose as device in suit does not constitute anticipation.

4. **Patents ⊜314—Validity and infringement of patent held questions of fact for trier.**

   Whether specific device is valid patent, and whether it has been infringed, are questions of fact for trier.

In Equity. Suit by the Line Material Company against the Brady Electric & Manufacturing Company. Decree for plaintiff.

Louis O. French and Louis Quarles, both of Milwaukee, Wis., and Henry E. Rockwell, of New Haven, Conn., for plaintiff.

John W. Joy, of Hartford, Conn., and George W. Brady, of New Britain, Conn., for defendant.

THOMAS, District Judge. Patent No. 930,527 was issued to Charles S. Burge on August 10, 1909. It relates to automatically adjustable strain insulator fixtures for attachment to houses. The bill charges the defendant with infringement, and seeks an injunction, accounting, and damages. It is stipulated by the parties that the defendant manu-

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

factured and sold in this district insulator fixtures exemplified by defendant's device, and that the allegations of the bill respecting the incorporation and residence of the respective parties are true, and that the plaintiff is the owner of the patent in suit.

There are two claims in the patent. Claim 1 calls for the combination of (1) a plate (a) having holes or slots suited for the reception of screws, and (b) an eye rigidly attached to said plate; (2) a clevis (a) suited to engage with said eye, and (b) having transverse registering holes suited to receive a pin; (3) an insulator (a) having a circumferential groove, and (b) an axial hole substantially at right angles to the plane of the groove, said hole being suited to receive a pin, and said insulator being suited to lie in said clevis with said hole registering with the said holes in said clevis; (4) a pin adapted to lie in said holes in said clevis and said insulator, and retain said insulator in said clevis.

Claim 2 calls for the combination of (1) a plate (a) having holes or slots suited for the reception of screws, and (b) an eye rigidly attached to said plate; (2) a clevis (a) suited to engage with said eye, and having (b) a central notch in its crotch, suited to localize said engagement with said eye, also having (c) transverse registering holes suited to receive a pin; (3) an insulator (a) having a circumferential groove, and (b) an axial hole substantially at right angles to the plane of said groove, said hole being suited to receive a pin, and said insulator being suited to lie in said clevis with said hole registering with the hole in said clevis; (4) a pin adapted to lie in said holes in said clevis and retain said insulator in said clevis.

It will be noted that the second claim is substantially like the first, except that it describes a central notch in the crotch of the clevis. The object of the invention is to replace fixed insulator brackets so long in use, and in order to meet the requirements of a strain insulator, the attachments, as the specification says, "should lie in the line of strain and thus be capable of resisting the strain without the use of an undue amount of material, and, at the same time, should be capable of self-adjustment into said line of strain."

The patent may be briefly described as consisting of a plate designed for attachment to a house or other building. The plate is provided with an eye, and in the eye is mounted a clevis. The clevis is mounted to swing, thus giving a universal joint connection between the clevis and the eye. A notch is provided, so as to furnish a centering point, and thereby keep the line of strain in one direction. The clevis carries a pin, which is mounted in the insulator. The function of the clevis is to take up the swaying of the wire between the metal parts, and the claim is made that, if there is any relative movement between insulator and this support, it is taken between the insulator and the pin, but the wire and the insulator are held together, thereby relieving the wear on the wire itself. It is claimed that this device has many advantages over the fixed type of bracket insulator, in that the wear on the wire is reduced, and snapping or breaking prevented, and in that the fixed insulator is unadjustable, and, because it is unable to take up the strain brought about by wind and snow, sleet, and ice, it frequently causes the wires to break under such conditions of strain.

The plaintiff claims that the defendant is manufacturing, selling, and using an automatically adjustable strain insulator house fixture, which infringes the claims of the plaintiff's patent.

[1, 2] The defendant has set forth a number of devices for the purpose of showing that the insulator of the patent in suit discloses no invention. With respect to these (with the exception of two or three such devices or patents), no real serious connection between those introduced and the prior art can be considered. The testimony of the head of the defendant corporation is vague and indefinite respecting Defendant's Exhibit G. It is a bracket having an opening to hold up an arc lamp, and it is claimed to have been in defendant's possession prior to 1904 or 1905. The witness had no knowledge of when they were sold, or how many were sold, and was unable to say that it was patented, or that it had ever been used for the purpose which the patent in suit served. He did not know how the defendant came into possession of it. It is certain that the evidence offered in connection with it fails to meet the test imposed by Chief Justice Taft in Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45 at page 60, 43 Sup. Ct. 322, 327 (67 L. Ed. 523). ·Said the court:

"The oral evidence on this point falls far short of being enough to overcome the presumption of novelty from the granting of the patent. The temptation to remember in such cases and the ease with which honest witnesses can convince themselves after many years of having had a conception at the basis of a valuable patent, are well known in this branch of law, and have properly led to a rule that evidence to prove prior discovery must be clear and satisfactory."

The Brady patent, No. 453,036, issued May 26, 1891 (Defendant's Exhibit C), shows an adjustable support for electric wires. The defendant claims that this is an adjustable house bracket, adjustable in any direction, and that the patent in suit is merely an improvement on the Brady patent. An examination of the evidence concerning it leaves a distinct impression that the only degree of similarity is in the designation given to it by the defendant in its catalogue issued in 1903, wherein it is referred to as an "adjustable and ventilated thread house bracket."

The Elliott patent, No. 476,193, issued May 31, 1892, lacks many of the essential elements contained in the patent in suit. It is designated and used as a "swivel pull-off for overhead wires." A reading of the patent suggests no thought that it may be used for a purpose similar to the purpose for which the device of the patent in suit was designed. It is used largely in connection with control wires. It lacks the plate member, and it is not clear that it could accommodate insulated wires, nor does it appear that it is a permanent, fixed support. Therefore, it is not an anticipation of the patent in suit.

[3] With respect to patents which might, by some manipulation or alteration, accomplish a given purpose not unlike the purpose disclosed in the patent in suit, after the obvious simplicity of the patent itself becomes apparent, the law is settled that such device or patent does not constitute anticipation. This rule has been stated by the Supreme

Court in Expanded Metal Co. v. Bradford, 214 U. S. 366, at page 381, 29 Sup. Ct. 652, 655 (53 L. Ed. 1034), by Mr. Justice Day, as follows:

"It is often difficult to determine whether a given improvement is a mere mechanical advance, or the result of the exercise of the creative faculty amounting to a meritorious invention. The fact that the invention seems simple after it is made does not determine the question; if this were the rule many of the most beneficial patents would be stricken down. It may be safely said that if those skilled in the mechanical arts are working in a given field and have failed after repeated efforts to discover a certain new and useful improvement, that he who first makes the discovery has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor. There is nothing in the prior art that suggests the combined operation of the Golding patent in suit. It is perfectly well settled that a new combination of elements, old in themselves, but which produce a new and useful result, entitles the inventor to the protection of a patent. Loom Company v. Higgins, 105 U. S. 580–591."

None of the other exhibits or patents offered by the defendant are close enough to the device of the patent in suit to be considered as anticipations. As anticipations to defend this suit, the defendant relies largely on the Brady patent, supra, and its Exhibit G, which, as I have said, is a device concerning which the evidence is not only incomplete, indefinite, and speculative, but the device itself is not adaptable to the purposes disclosed by the patent in suit.

### Infringement.

Coming, then, to the question of infringement, the device which the defendant has been manufacturing, Defendant's Exhibit 6, known as the "Brady device," has all of the elements of the claim of the patent in suit. True, some of them operate in a different way; but the function performed and the purposes for which it is used are identical with plaintiff's patent. Instead of a clevis, which is U-shaped, it has a device which is V-shaped, called sister hooks. In practical use the sister hooks come together and center, under strain, so as to receive the strain at one point, to wit, in the center of the V, the same as the notch in the center of the U receives the strain.

Instead of a plate having holes suited for the reception of screws, the Brady device has a single lag screw, adapted to screw into the side of the house, over which is bent a clip, which is attached to the sister hook, but performing substantially the same in each case, and accompanying the single purpose of centering the strain. It will thus be seen that, when the respective devices are, in use, they both serve the same purpose in about the same way, as each one has a slot or slots for the reception of a screw or screws, upon which are supported the insulators, whether made of wood, porcelain, or any other proper insulating material. I attach no importance to the fact that defendant's device operates with only one screw, and that a lag screw, and that plaintiff's requires more than one screw, nor is it of any consequence that the device of the plaintiff contains a clevis which is very old in the ship chandlery art. It is the combination which is of importance, and not the elements which make up the combination. Apropos of this the Supreme Court stated the rule clearly in Machine Co. v. Murphy,

97 U. S. 120, 24 L. Ed. 935. Mr. Justice Clifford, writing the opinion, said on page 125:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue; the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions, or in a different way, or produce a substantially different result. Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form, the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained.  *  *  * Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that, if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. Curtis, Patents (4th Ed.) § 310."

In connection with this rule this court said, in Manton-Gaulin Mfg. Co. v. Dairy Machinery & Construction Co., 238 Fed. 210, 215:

"The law is well settled that infringement is not avoided by dividing an integral element of a patented machine into distinct parts, so long as the function and operation remain substantially the same; and the same rule applies as to the joinder of two elements into one integral part accomplishing the purpose of both, and no more, so long as the same results are accomplished. The impairment of the function of a part of a patented structure by omitting a portion will not avoid infringement, nor will a mere change in form, where the principle of operation is preserved and appropriated."

What Chief Justice Taft said on page 63 (43 Sup. Ct. 328) in Eibel Co. v. Paper Co., supra, with reference to patents of this character, is not only pertinent, but conclusive:

"His was not a pioneer patent, creating a new art; but a patent which is only an improvement on an old machine may be very meritorious and entitled to liberal treatment. Indeed, when one notes the crude working of machines of famous pioneer inventions and discoveries, and compares them with the modern machines and processes exemplifying the principle of the pioneer discovery, one hesitates in the division of credit between the original inventor and the improvers, and certainly finds no reason to withhold from the really meritorious improver, the application of the rule 'ut res magis valeat quam pereat,' which has been sustained in so many cases in this court. Winans v. Denmead, 15 How. 338, 341; Corning v. Burden, 15 How. 265, 269; Turrill v. Railroad Co., 1 Wall. 491, 510; Rubber Co. v. Goodyear, 9 Wall. 788, 795; McClain v. Ortmayer, 141 U. S. 419, 425."

[4] Whether or not a specific device is a valid patent, and whether or not it has been infringed, are questions of fact for the trier. Concrete Appliances Co. v. Meinken (C. C. A.) 262 Fed. 958. At page 965 Judge Denison said:

"As upon every such question there is no authoritative decision which compels one or the other conclusion. The doubtful inference is rather one of fact; but we select and refer to a few instances where invention has been found—by the Supreme Court or by this court—and the facts of which may

·well be thought to present no stronger inferences in its favor than do those of the instant case. Loom Co. v. Higgins, 105 U. S. 581, 590, 26 L. Ed. 1177; Hobbs v. Beach, 180 U. S. 383, 393, 21 Sup. Ct. 409, 45 L. Ed. 586; Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034; National Co. v. Aiken, 163 Fed. 254, 259, 91 C. C. A. 114; Warren v. Owosso, ·166 Fed. 309, 92 C. C. A. 227; Morgan Co. v. Alliance Co., 176 Fed. 100, 109, 100 C. C. A. 30; Ferro-Concrete Co. v. Concrete Co., 206 Fed. 666, 124 C. C. A. 466; International Co. v. Sievert, 213 Fed. 225, 129 C. C. A. 569."

I am therefore impelled to hold that the plaintiff's patent is valid, and that the defendant's device infringes. There may be a decree for plaintiff, with costs; and it is

So ordered.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes