SIDNEY BLUMENTHAL & CO., Inc., v. SALT'S TEXTILE MFG. CO.

SALT'S TEXTILE MFG. CO. v. SIDNEY BLUMENTHAL & CO., Inc.

District Court, D. Connecticut. August 12, 1927.

Nos. 1817, 1819.

1. Patents ⬉328—Stolzenberg 1,521,259 for process of imitating a fur blanket held valid and claim 1 infringed.

Stolzenberg patent, No. 1,521,259, for process of imitating a fur blanket in pile fabric, *held* not anticipated and valid; claim 1 also *held* infringed and claim 2 not infringed.

2. Patents ⬉328—Blumenthal patent, No. 1,-548,819, for producing pile fabric, claims 1 and 3, held void for lack of invention.

Blumenthal patent, No. 1,548,819, for method of producing a pile fabric simulating a fur blanket, claims 1 and 3, *held* void for lack of invention.

**3. Patents ⊗⇒43—Design patent is not invalid because design is suggested by natural product.**

A design patent is not invalid because the design is suggested by a natural product, where not a mere copy.

**4. Patents ⊗⇒328—Gowans design patents, Nos. 66,119, 67,279, and 68,138, for patterns on blankets, held not infringed.**

The Gowans design patents, Nos. 66,119, 67,279, and 68,138, all for designs for patterns on pile fabric blankets, simulating furs, *held* not infringed.

**5. Trade-marks and trade-names and unfair competition, ⊗⇒70(1)—Claim of unfair competition held not sustained.**

Claim of unfair competition *held* not sustained because defendant used the same material in making a similar product, where there was no evidence of deceit or confusion in the trade.

**6. Patents ⊗⇒328—Steiner patent, No. 1,069,-588, for imitating fur blankets, held not infringed.**

Steiner patent, No. 1,069,588, for method of treating pile fabric to imitate a fur blanket, *held* not infringed.

**7. Patents ⊗⇒229—Specific claims are not infringed by using different means or different steps in method.**

Unmistakably specific claims are not infringed by use of different means in a machine or different steps in a method.

In Equity. Suit by Sidney Blumenthal & Co., Inc., against the Salt's Textile Manufacturing Company, and suit by the same defendant against complainant. Decree for complainant in first suit on part of claim and for defendant on the remainder. In second suit decree of dismissal.

E. Clarkson Seward and W. Saxton Seward, both of New York City, for Blumenthal Co.

L. A. Watson and Lawrence Bristol, both of New York City, for Salt's Co.

THOMAS, District Judge. In the first suit, No. 1817, which was brought on September 3, 1925, the Blumenthal Company charges the Salt's Company with infringement of two process patents, one to Stolzenberg, No. 1,521,259, issued December 30, 1924, and one to Blumenthal, No. 1,548,819, issued August 11, 1925, as well as three design patents all issued to Gowans, the first on December 2, 1924, No. 66,119, the second on May 12, 1925, No. 67,279, and the third issued on September 8, 1925, No. 68,138. All of these patents were issued to the Blumenthal Company as assignee of the respective inventors. The Blumenthal Company also charges the Salt's Company with unfair competition.

In the second suit, No. 1819, which was brought October 8, 1925, the Salt's Company charges the Blumenthal Company with infringement of the Steiner patent, No. 1,069,-588, issued August 5, 1913, and purchased by the Salt's Company on September 16, 1925, very soon after it was sued by the Blumenthal Company.

Since the party plaintiff in the first suit is party defendant in the second suit, and since the parties stipulated that the testimony and exhibits in one case should be used in the other, and as both cases were tried together, they will be discussed and decided in one opinion.

The subject-matter of both suits relates to fabrics made to imitate fur blankets of the type comprising a plurality of small animal pelts secured together.

[1] In the case of the Blumenthal Company against the Salt's Company the Stolzenberg patent, No. 1,521,259, relates to a process for imitating a fur blanket of a plurality of marked fur pelts secured together. The specific method disclosed in this patent consists in producing a pile fabric having the pile fiber similar to the outstanding characteristics of the fur to be imitated and with the length and density of the pile appropriately chosen. Designs representing or imitating the characteristic markings of the individual pelts of natural fur are printed in a desired arrangement directly upon the pile of the fabric by wooden blocks or rollers. After the designs have been imparted to the pile, the fabric is laid upon a supporting surface and the pile is then subjected to treatment by a whirring device or head supported upon the rotating element of a manually guided tool. This whirring device is moved, as it rotates, along between the various designs printed on the piece of fabric. The result of the action of this whirring instrument is to interrupt the lay of the pile to produce a varied effect as to the sheen and also to give the appearance of sewing between the edges of several small animal pelts made into a fur blanket. The finished article is then sold as a fabric or cloth fur blanket in imitation of a real fur blanket made from small marked pelts sewed together, and adapted to be made into robes, coats, cloaks, or garments in imitation of fur.

Claims 1 and 2 of the Stolzenberg patent are in issue. Claim 1 is as follows:

"1. A method of producing an imitation of a fur blanket composed of a plurality of pelts sewed together, which includes the following steps: Providing a pile fabric; imparting a plurality of designs to the pile; and

disturbing the pile intermediate the designs by applying a whirring instrument thereto."

The second claim is exactly like the first, except that it provides for disturbing the pile intermediate the design "by *manually* applying a whirring instrument thereto."

The Salt's Company contends that the Stolzenberg patent is invalid in view of prior knowledge and publication and also because of insufficient disclosure, and to support its contention it relies upon the testimony of the patentee when he says that it was common in the art prior to the filing date of this patent to print various designs upon fabrics. The whirring instrument or head thereof used by the Blumenthal Company in its manufacture of fur fabrics is in evidence. Stolzenberg also testified that he had known of such a tool in the art since 1912, and that the tool was used for accomplishing the same thing as is accomplished by the use of the tool in the Blumenthal Company's carrying out of the process in suit so far as the tool itself is concerned. The head of the whirring device as used by the Blumenthal Company is heated by gas and is provided with a groove on the work face. This groove in the heated head helps to turn or flatten the pile of the fabric and tends to make a ridge or demarcation between the pelt designs printed on the pile.

The Salt's Company also relies upon the prior art Steiner patent, No. 1,069,588, issued August 5, 1913, which discloses the method of imitating fur blankets of sewed skins by subjecting steamed pile fabric to two sets of spaced rotating brushes having their axis of rotation parallel to the surface of the fabric. The brushes of one set lay the pile in stripes in one direction and the brushes of the other set lay the pile in the intervening stripes in the other direction. Then the lay of the pile between the stripes and across the stripes is disturbed by a steam jet so that there results an imitation of sewed edges between small individual pelts. The specific furs mentioned in this Steiner patent are mole and squirrel, both of which are of uniform color. There is no disclosure in this patent of printing any color design on the pile to imitate individual marked pelts. The British patent to Mills, No. 14,873 of 1895, discloses rotating tools for treating velvet. The British patent to Child, No. 21,699 of 1905, shows the use of a manually guided steam nozzle for making curls or whirls in the pile of a fabric to imitate bear skins. These patents lack the disclosure of any color design on the fabric to imitate small marked pelts.

The Salt's Company also refers to other prior patents, to wit, United States Nos. 397,064, 462,979, 1,183,243; British patent No. 4,626 of 1904, and French No. 348,616, which show various means for producing designs in the sheen of pile fabrics by disturbing the pile. The disclosures of these patents are not relied upon as being especially pertinent, and they require no detailed consideration. the Salt's Company also directs attention to and claims that the Blumenthal Company's design patents to Gowans, Nos. 65,647 and 66,119, are prior art. Both of these patents relate to ornamental designs for fabrics. There are no specifications in these design patents which in any way describe the designs or are helpful on the question of disclosure, and therefore the illustrations alone must be considered. Each design patent shows mosaics of a repeated pattern in light and shade. It appears, however, that both parties to these suits consider these design patents as disclosing simulations of a plurality of animal pelts to imitate a fur blanket, and the Salt's Company therefore relies upon them as showing it to be old in the art to print marked pelt designs on textiles.

An analysis of the prior art shows that the use of the whirring device for producing effects on the sheen of pile fabric is old in the art. It was old in the art to lay the pile of cloth of a single color in striped rows and then produce imitation of sewing across and between the rows to make imitation of single color pelts. The main effect of imitation is produced by the lay of the pile of the fabric. It was old in the art to print colored designs on textiles. The prior art, however, does not show the steps of combining the impartion of a plurality of marked pelt designs in color to the pile, and then disturbing the pile intermediate the designs by the whirring instrument to simulate sewing between the individual marked pelt color designs. This is what Stolzenberg invented. This method was a novel step in the art and was patentable.

We come now to a consideration of the defense that the patent is invalid for lack of disclosure. The Salt's Company urges that the patent does not disclose details of the whirring instrument. Accepting the assertion made on the question of anticipation that this tool was well known in the art, it follows that it was not necessary for the patentee to go into mechanical details, since it is the rule that patents are addressed to those skilled in the art. Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 22 S. Ct. 698, 46 L. Ed. 968. The Salt's Company points out that the whirring head used by the Blumenthal Company to produce the samples of cloth which are in evidence, was pro-

vided with a groove and was heated, and that no such provisions are mentioned in the patent. While these attributes may have been necessary or desirable to produce the Blumenthal Company's particular fabric fur in evidence, they are not necessary to the general utility, or in order to understand this process patent. Therefore this defense of lack of disclosure fails.

Taking up now for consideration the question of the alleged infringement by the Salt's Company of the Stolzenberg patent, it appears that the Salt's Company has made and sold a fabric known in the trade as "Burundells," a sample of which is in evidence. This fabric fur is made by imparting a plurality of designs to the pile of the fabric, and disturbing the pile intermediate the designs in one direction by whirring heated heads mounted in a gang machine and guided by a cam to effect a chevron movement which is in accord with the arrangement of the color designs. Then the fabric is passed in a different direction through another machine having similar whirring heated heads mounted on spaced spindles so as to pass through the points of the chevrons, thereby completing the whirring disturbance of the pile intermediate the several designs on the fabric. Dividing an element into distinct parts does not avoid infringement, nor does the carrying out of a method by dividing a step into two operations avoid infringement. Manton-Gaulin Manufacturing Co. v. Dairy Machinery & Construction Co. (D. C.) 238 F. 210. Neither does the fact that the elasticity of the goods has a tendency to cause occasional lack of register between the disturbance of the pile and the designs thereon avoid infringement. General Electric Co. v. Alexander et al. (C. C. A.) 280 F. 852; Elyria Iron & Steel Co. v. Mohegan Tube Co., Inc., et al. (C. C. A.) 7 F.(2d) 827.

By its evidence, the Salt's Company showed that the first-mentioned machine had been in use in its Bridgeport factory since 1921. There is no testimony that this machine was used as a step in the process in suit. The evidence is not sufficient to establish a prior use of the process in suit. Line Material Co. v. Brady Electric & Mfg. Co. (D. C.) 299 F. 822; Kalamazoo Loose Leaf Binder Co. v. Wilson Jones Loose Leaf Co. (D. C.) 286 F. 715.

I conclude, therefore, that claim 1 of the Stolzenberg patent, No. 1,521,259, is infringed by the Salt's Company, and that claim 2, being limited to "manually" applying the whirring instrument, is not infringed by the machine method used by the Salt's Company.

## The Blumenthal Patent.

[2] On an application filed March 11, 1925, patent No. 1,548,819 was issued to Blumenthal on August 11, 1925, and assigned to the Blumenthal Company. It also relates to fabric fur blankets simulating animal fur, and discloses the method of coloring the pile of the fabric by stencil, brush, roller, or other processes well known in the art, to represent a fur blanket made of a plurality of skins sewed together. The effect, according to this patent, is produced entirely by color, or shades of color, without any reference to the lay of the pile.

Claims 1 and 3 are in suit. They read:

"1. A method of producing a fabric simulating a fur blanket comprising the providing of a pile fabric and coloring the same to resemble the pelts of animals sewn together."

"3. A method of producing a pile fabric simulating a fur blanket comprising the providing of a pile fabric, coloring the same in areas simulating the pelts of animals, and chemically treating the fabric in a design peripherally adjacent to said surfaces simulating the pelts of animals, the whole having the appearance of animal skins sewn together as in a fur blanket."

The witness Stolzenberg testified that it was old in the art long prior to the filing date of the application for this patent to apply an infinite variety of designs to fabrics by block printing or otherwise, and that, where hand-printing blocks were used, the design was repeated to any desired extent; also that it was equally old in the art to print designs with a dark tone in the center, shading off towards the side, and that it was likewise an old process to use a chemical to extract the color, to form demarcations wherever and whenever desired. The Salt's Company introduced in evidence an exhibit which is a piece of cloth known as "squirrel belly," which shows a dark grey background having a plurality of lighter colored designs thereon which simulate a plurality of small animal skins assembled as a blanket. This exhibit was identified as being the fabric designated on a sales ticket showing its purchase from the Salt's Company in 1905. Several witnesses testified as to the production of such "squirrel belly" cloth by the Salt's Company for many years past. The Stolzenberg patent, No. 1,521,259, was applied for on August 28, 1924, so, of course, this patent is prior art against Blumenthal, whose application was filed March 11, 1925. Milburn Co. v. Davis-Bournonville Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651.

The Stolzenberg patent not only states that pelt designs are printed on the fabric, but that care should be taken to arrange these designs in a somewhat artistic and attractive manner. The fact that the Stolzenberg patent goes further and discloses the method of disturbing the pile intermediate the designs in a particular way does not detract from the disclosure as to the mere coloring steps, which is all the Blumenthal patent deals with.

With reference to the manner of producing the demarcation so as to simulate the pelts, the inventor says in his specification:

"I sometimes do this with an air brush spray, and sometimes with a stencil and brush, or with a roller, which processes are well known to those skilled in the art, although said processes have not hitherto been used in combination with a formation of animal pelts representing fur blankets."

The alleged novelty, therefore, is limited to merely coloring the fabric to simulate fur blankets. In view of the state of the art long prior to March 11, 1925, the filing date of the application for the Blumenthal patent, No. 1,548,819, which shows imitation fur blankets made by coloring fabric, it did not require invention at that late date to perform the methods defined in claims 1 and 3 of this patent. I therefore hold that the two claims in suit are invalid.

## The Design Patents.

[3] These three patents, all to Gowans and assigned to the Blumenthal Company, are without descriptive specifications and each contains but a single claim, which in each case is limited to the ornamental design "as shown." We find no help, therefore, from any explanations, and are confined to the pictorial drawings of these patents to determine the questions in issue. The Salt's Company urges that they are invalid because they are mere imitations of natural products. A design patent, to be valid, must be a new and original design, and, if the subject-matter is a mere copy of any old form, whether natural or artificial, there is nothing new or original about it. However, the mere fact that a natural product is suggestive of a design does not necessarily detract from the originality of the design. Much of the most pleasing ornamentation is inspired or suggested by nature. The scanthus leaf and the lotus flower have been the inspiration of many beautiful objects, such as the Corinthian capital and the ancient friezes. Even more commonplace things may be arranged in pleasing harmonious lines, such as the well-known egg and anchor or egg and dart

design. While the markings on animal pelts may have helped to suggest the designs of the design patents in suit, they do not appear to be mere copies of any single animal pelt.

[4] Considering the individual design patents, the Gowans No. 66,119, filed July 15, 1924, and issued December 2, 1924, discloses striped bands each having three tones, namely, a dark shade, a half tone shade, and a lighter shade arranged in a chevron effect over the design, and very distinct narrow dark stripes running through the points of the chevrons. The publications dated 1922 and 1923, offered in evidence by the Salt's Company to show the state of the art, show pictures of fur coats having similar markings thereon. While these publications were not set up in the answer, it is well established that they may nevertheless be received and considered as showing the state of the art. Dunbar v. Meyers, 94 U. S. 187, 198, 199, 24 L. Ed. 34. The Salt's Company's fabric complained of as an infringement has a plurality of stripes arranged in chevron effect with one edge dark and a gradual blending to a lighter shade at the opposite edge of each stripe. The narrow dark stripe of the design patent running through the points of the chevrons is absent. The Salt's Company's design is more nearly like that shown in the publications referred to supra than it is like design patent No. 66,119. To find infringement would require us to bring the patented design into conflict with the designs shown to be old by the state of the art, and the patent would be invalid. However, to limit the design according to the claims "as shown," there is no infringement of Gowans design patent No. 66,119 and it is so held.

Design patent No. 67,279 on an application filed February 25, 1925, and issued May 12, 1925, is likewise limited to the design "as shown."

The drawing discloses a plurality of areas bounded by light lines with dark shading on each side of the boundary lines, a series of heavy dark dots representing dark shading to make up the middle of said area, and smaller dots representing lighter shading on each side of the mid area. A similar arrangement of dots representing shading and boundary lines is shown in the prior Creasey design patent, No. 66,925, filed November 15, 1924, and issued March 31, 1925. The shape of the boundary lines in the Creasey patent is somewhat different from those shown in Gowans No. 67,279, but, if the taillike portions of the figures on the Creasey design be omitted, the two designs would be substan-

tially identical. It would not amount to invention to make this simple change. The appearance of the two designs, in general effect, is very similar, in that both have a light background with heavy dot shading in the center of the design and very distinct light border lines formed by separated dark shading. The Salt's Company's cloth complained of has a very dark background, with indistinct border lines formed by disturbing the pile of the fabric and with a very dark central portion shading out slightly but still quite dark toward the border lines. The general effect of the Salt's Company's fabric is a very dark tone, with the boundary or border lines scarcely perceptible. The design of the Gowans patent No. 67,279 is more nearly like the prior Creasey patent than it is like the Salt's Company's fabric. Therefore Gowans design patent No. 67,279 is held not to be infringed.

As to the last of these three patents to Gowans, No. 68,138, filed May 20, 1925, and issued September 8, 1925, we are again compelled to consider only the drawing "as shown." It discloses a light-toned ground, upon which are a plurality of figures, each of which comprises a plurality of dark stripes with a curved line over one end of the stripes with dots between the curved line and the stripes, and with fanned out or angularly disposed dots at the other end of the stripes. There are also light weight shade lines between the several designs. Here again the patented design is closer in appearance to the prior art than is the Salt's Company's fabric charged with being an infringement. The Gowans patent No. 65,647, filed July 24, 1924, and issued September 23, 1924 (not in suit), shows a similar design having a light background and striped figures thereon with each figure having a curved line on one end and fanned out or angularly disposed dots on the other end. There are shade lines between each figure as in the design patent No. 68,138 in suit. Furthermore, the central row of figures in this prior patent is arranged in a chevron effect as is the arrangement in the patent in suit. The individual figures of No. 68,138 in suit are very similar to the figures illustrated in the Stolzenberg patent, No. 1,521,259, of December 30, 1924, even to the same number of parallel lines in each figure. The figures in the Stolzenberg patent, however, are not arranged in a chevron pattern. The Salt's Company's fabric, charged to infringe this Gowans patent No. 68,138, has a very dark background on which are light-toned definitely outlined figures. The stripes on these figures are unlike the

stripes on the patent No. 68,138, and the fanned-out dots and the dark-toned boundary lines of the patented design are absent. There are more features of similarity between patent No. 68,138 and the prior patents cited than there are between Salt's Company's fabric and the patented design. Therefore to view this design in such light as to find infringement would be to bring the patented design within the prior art and thereby render the patent invalid. But, when the patented design in No. 68,138 is limited to the design "as shown," as must be done, there is no infringement, and it is so held.

### Unfair Competition.

[5] The Blumenthal Company charges the Salt's Company with unfair trade, and claims that the evidence shows that a few months after its fabric was put on the market under the trade-name "Barunduk" the Salt's Company brought out its imitation of "Barunduk" under the name "Burundells."

There is a natural fur called "Burunduki," and this appears to be the source of the Blumenthal Company's trade-name. The Salt's Company's trade-name seems to be fanciful. Neither the spelling, pronunciation, nor the appearance of the two trade-names is so similar as to justify a finding of unfair competition merely because of the use of these trade-names.

While it is true that the testimony shows that the Salt's Company's cloth came on the market a short time after the Blumenthal Company's goods in question came out, Mr. France, president of the Salt's Company, and Mr. Rich, its then sales promotion manager and stylist, testified that, at the time the Salt's Company's fabrics in question were brought out, neither of these witnesses had knowledge of the Blumenthal Company's Barunduk fabric. These witnesses account for the Salt's Company's patterns complained of as being inspired by real fur coats seen by them in a display window in a large department store in New York City. It appears from the testimony that fabrics of this kind are called "fancies" or "novelties," and that they are passing vogues for such materials. It is therefore not surprising that, since at that time there was a demand for natural Burunduki fur, which appears to be chipmunk pelts sewed together, both of these manufacturers, one in Shelton and the other in Bridgeport, Conn., should place on the market, about the same time, fur fabric in imitation, or a general simulation, of the then popular article, to enable purchasers of less expensive materials than real fur to obtain

attractive up-to-date garments at a relatively low cost. Neither is it unusual that both of these manufacturers of pile fabrics should use similar materials for their cloth. It is the natural result of skill in the art to choose those materials best suited to imitate a particular natural fur which fashion dictates for the time being. Such selections of materials do not constitute unfair competition. There is no evidence of deceit, or palming off of one party's goods for those of another, nor of confusion in the trade brought about by any act of the Salt's Company calculated to result in selling its goods as those of the Blumenthal Company, nor a confusion as to the source of the product. Harriet Hubbard Ayer, Inc., v. Federal Trade Commission (C. C. A.) 15 F.(2d) 274. In Goodyear Co., etc., v. Goodyear Rubber Co., etc., 128 U. S. 598, 9 S. Ct. 166, 32 L. Ed. 535, it was held that relief in equity to restrain unfair trade is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacture, to the injury of the plaintiff. Selling at a lower price may be the result of competition, but this does not of itself constitute unfair competition.

### Case No. 1819 on the Steiner Patent.

[6] In the counter suit by the Salt's Company against the Blumenthal Company, the Steiner patent, No. 1,069,588, filed February 21, 1913, and issued August 5, 1913, is in suit. The method disclosed in this patent has been previously explained, and it is deemed sufficient here to point out that this patent deals with the method of treating pile fabric so as to imitate a fur blanket made of a plurality of small pelts of a single color, such as mole skins or squirrel skins. The effect desired is produced by laying the pile in certain entire sections—that is, the pile representing the full width of a row of pelts, in one direction and laying the pile in the adjoining section, or the adjacent row of single width pelts, in the opposite direction. This produces a striped effect on the monotone fabric due to the sheen of the nap. The pile between the stripes and also at intervals across the stripes is disturbed in narrow lines by a steam jet to imitate suture lines or seams joining the small skins.

Since the fabric is of a single color, the result obtained depends largely upon the fact that all of the pile in any one section, or in any one single row of imitation pelts, lies entirely in one direction, while all of the pile in an adjacent row of imitation pelts lies in another direction.

Claims 1 to 4, inclusive, are in suit. Claims 1 and 2 will serve as representative claims, and are as follows:

"1. The method of producing imitation pieced fabrics, consisting in laying the nap of a pile fabric in certain sections in a different direction from that in other sections, and subdividing the individual sections by suture lines formed in the nap of the fabric.

"2. The method of producing imitation pieced fabrics consisting in outlining upon a pile fabric sections by suture lines impressed upon the nap of the fabric, by a jet of steam or other fluid."

Claim 3 is similar to claim 1, except that claim 3 calls for, "outlining said sections or portions thereof by suture lines impressed upon the nap of the fabric."

Claim 4 is the same as claim 3, with the additional limitation that the suture lines are impressed "by means of a jet of steam or other fluid."

While the Blumenthal Company has pleaded a number of prior art patents against Steiner, they do not anticipate, and need but slight consideration in view of the statement in the brief of counsel for the Blumenthal Company that "the Steiner patent refers to an imitation of pelts sewn together, and none of the patents prior to it discloses such subject-matter."

The infringement complained of is based upon the Salt's Company's contention that the nap or pile on certain of the Blumenthal Company's fabric fur is laid in opposite directions on each side of the ridge representing the seam between pelts. This is due to the operation of the "whirring" instrument which lays the pile in one direction under one side of the rotating head and in the opposite direction under the other side of the rotating head. The width of this head, however, is relatively narrow as compared with the full section of the individual pelt simulations. In producing the Blumenthal fabric, the head is merely passed around the colored boundary of the individual colored pelt areas, and the purpose of the whirring instrument is to disturb the pile intermediate these individually chosen pelt designs and not over the entire areas. The individual pelt effect in the Blumenthal fabric is obtained largely by variation of color, whereas in the method disclosed and claimed in the Steiner patent this effect is produced by sheen due to the lay of the pile. In the Blumenthal method of pro-

ducing its fabric, the nap is laid in one direction on one side of a single pelt design and in the other direction on the other side of the same single pelt. In the Steiner method, the nap lays in the same direction over the whole of a section simulating a single pelt. Claims 1 and 3 specify the patented method of obtaining the result, which consists "in laying the nap of a pile fabric in certain sections in a different direction from that in other sections."

[7] This language, when interpreted in view of the specification, as it must be, means that the "sections" are entire individual imitation pelt areas. Lincoln v. Waterbury Button Co. (C. C. A.) 297 F. 619. The Blumenthal Company does not use this method. Claims 2 and 4 of the Steiner patent are specific as to the use of a steam jet to produce the imitation suture lines. The Blumenthal Company does not use a steam jet, but the Salt's Company urges that the whirring head is an equivalent of a steam jet. To constitute infringement, the defendant's acts must be within the terms of the patented claims. Even this, however, does not conclusively establish infringement, since there remains to be determined the question whether the Blumenthal Company is using the equivalent of that which is disclosed in the patent. Westinghouse v. Boyden, 170 U. S. 537, 569, 18 S. Ct. 707, 42 L. Ed. 1136. But, where claims are clearly and unmistakably specific in their terms, they are not infringed by the use of different means in a machine or by different steps in a method as is the case here. White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303; Minerals Separation v. Butte, etc., Mining Co., 250 U. S. 336, 39 S. Ct. 496, 63 L. Ed. 1019. Furthermore, the whirring device used by the Blumenthal Company is not an equivalent of a steam jet disclosed in the Steiner patent. The two devices operate differently to produce different results. The Steiner patent is therefore held to be valid but not infringed.

### Summary.

In the suit of the Blumenthal Company v. the Salt's Company, claim 1 of the Stolzenberg patent, No. 1,521,259, is infringed; claim 2 is not infringed.

Claims 1 and 3 of the Blumenthal patent are invalid.

The Gowans design patents Nos. 66,119, 67,279, and 68,138 are not infringed.

Unfair competition has not been established. The plaintiff's bill in case No. 1817 is therefore dismissed as to the Blumenthal patent, the Gowans design patents, and as to the charge of unfair competition.

The plaintiff may have a decree on claim 1 of the Stolzenberg patent.

In the suit of the Salt's Company v. the Blumenthal Company, the Steiner patent, No. 1,659,588, is not infringed, and the bill is dismissed.

No costs will be taxed against either party.

Decree accordingly.