**JOHNSON CO., Inc., v. PHILAD CO. et al.**

No. 8613.

Circuit Court of Appeals, Ninth Circuit.

May 4, 1938.

Charles C. Montgomery, of Los Angeles, Cal., for appellant.

Lyon & Lyon and R. E. Caughey, all of Los Angeles, Cal., Morris Kirschstein, of New York City, and T. Paul Titus, of Cleveland, Ohio (Morris Kirschstein, of New York City, on the brief), for appellees.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an interlocutory decree holding claims 2, 3, 4, 5, and 6 of re-issue patent No. 18,841 granted Josef Mayer May 30, 1933, for a hair waving method, valid and infringed. This is the second reissue. The original patent, No. 1,622,957, was granted March 29, 1927. The patent was first reissued August 6, 1929, No. 17,-393. Claim 2 was allowed in the original patent, No. 1,622,957. Claims 3, 4, and 5 of

patent No. 18,841 were claims 8, 9, and 10 of reissue patent No. 17,393. Claim 6 first appeared in the second reissue.

Appellant's contentions are, briefly, as follows: That the patent is invalid because of failure to disclose essential features of the process; that the method lacks invention and does not disclose novelty in view of the prior art; that claims 3, 4, and 5 are invalid because reissue claims attempting to recover a rejected claim and without proper oath or showing; that claim 6 is invalid because a reissue claim without proper oath or showing, and because of laches and intervening rights; that claim 2 of the patent is not infringed; and that the court erred in holding that the sale or use by appellant of hair waving pads constituted contributory infringement of the patent and in enjoining their sale or use.

### Sufficiency of the Disclosures.

The patent in suit discloses a method of applying the Croquignole style of hair waving to human hair on the scalp. Croquignole waving was not new at the time of the Mayer invention, but old in the art of artificial hair waving.

In the older or "spindle" type of permanent hair waving on a human head the hair was bunched together to form a substantially round strand, tied near the scalp and then, starting at a point near the scalp, helically wound around a rod or spindle. In the Croquignole style of hair waving the strands of hair are spread out and then wound upon a curler rod spirally, that is, turn upon turn, from their free ends toward the scalp. The patented method is substantially as follows: The hair growing on a square inch area of the scalp is spread out flat to form a substantially single plane and two clamps are applied near the scalp to the hair as thus arranged. The clamp furthest from the scalp is constructed with a spring at one end and has a locking arrangement at the other end composed of a notched or stepped end fashioned to receive a link. With this clamp, a resilient gripping action is obtained and the hair kept flat and under pressure throughout its full width. After the clamps are placed, the outer end of the strand of hair is placed under a tongue of a curling rod which clamps it to the rod. The rod is rotated so that the hair is wound on the curler. Then the hair on the curler is wrapped in flannel pads moistened with a hair waving solution. It is then covered with waxed paper and parchment and a clamping member is clamped over the rod and outside the parchment which incloses the hair. The clamp is perforated and resilient so that it can be readily sprung into position and will "somewhat grip the roll of hair." Heat is applied with an electric heater which is placed around the clamp. The claimed novelty in the patented method is in the use of the two clamps next to the scalp in the first step of the process. By the use of the second clamp the hair may be wound on the curling rod under tension. The pull is distributed evenly to the scalp without discomfort to the subject. Thus, a practical method of applying a Croquignole permanent wave to the hair on the human head is disclosed by the patent.

The appellant's attack on the sufficiency of the disclosures is directed to the fact that it is not stated in the patent that the hair is to be wound under tension on the curling rod. There is no merit in this contention. The patent was directed to those skilled in the art where the Croquignole wave was not new and where it was well known that strong tension must be applied to the hair while winding in order to produce a permanent wave. The disclosure was sufficient.

The appellant further contends that claims 2, 3, 4, and 5 of the patent fail to show utility in that they do not provide for holding the hair under tension while being heated. This contention is likewise without merit. That the tension of the hair obtained by winding must be retained during the heating of the hair was well known in the art and necessarily implied. It was not the essence of the patented process. The omission would readily be supplied by any one skilled in the art and was disclosed in the specifications by a perforated flexible container which, as stated in the patent, "will somewhat grip the roll of hair." It follows that such omission does not invalidate the claims. Deering v. Winona Harvester Works, 155 U.S. 286, 302, 15 S.Ct. 118, 39 L.Ed. 153; Webster Loom Co. v. Higgins, 105 U.S. 580, 26 L.Ed. 1177; Brammer v. Schroeder, 8 Cir., 106 F. 918, 930. We conclude that the patent and claims sufficiently disclosed the invention.

### Invention and Novelty over the Prior Art.

Appellant contends that the patent in suit was anticipated by patent No. 1,400,-637 issued December 20, 1921, to W. Szlanyi and patents issued to Z. Popin (patent No. 1,376,358, April 26, 1921, patent No.

1,416,750, May 23, 1922, patent No. 1,447,-997, March 13, 1923).

The Szlanyi patent discloses a process whereby hair is wound in spiral form and a Croquignole wave imparted to it. Prior to the winding and heating of the hair, it is placed in a flexible hose shaped receiver made of cloth. The end of the receiver nearest the scalp is fastened to a heat insulating pad or shield which acts to protect the head from the heat. This shield is not a clamping device corresponding to the second clamp in the patent in suit and the process does not disclose the step of holding the hair under tension with a clamp so that in winding it an even pull is imparted to each hair. It is clear that the Szlanyi patent does not anticipate the use of the clamping device in the patent in suit; otherwise the method and result are substantially the same.

The Popin patent, No. 1,447,997, is for a shield adapted to protect the scalp from heat during the hair waving process. The shield is composed of two separate parts, one soft, as of felt, the other hard, as of asbestos. The band of hair to be treated passes through a slot in each, being inserted therein through a diagonal slot which extends from the horizontal slot to the corner of the part. This shield is not designed to tightly grip the hair and the Popin patents do not disclose the patented process in suit.

■ The evidence shows that the Mayer process solved the problem confronting hair dressers by providing a practical method of applying a permanent Croquignole wave to the human head. As we have said, the essence of the invention was applying clamps to the hair before winding. Although this step was simple, it apparently was not obvious to those skilled in the art of hair dressing and the introduction of the patented method met with immediate and substantial commercial success. Solving such a problem in a practical manner constitutes invention. See Craftint Mfg. Co. v. Baker, 9 Cir., 94 F.2d 369, decided

by this court January 10, 1938; General Elec. Co. v. Wabash Appliance Corp., 2 Cir., 93 F.2d 671.

■ We have not attempted to discuss all the patents cited as anticipating the Mayer patent, but have examined them and find no merit in the claim of anticipation. We conclude that the patent in suit shows invention and is not anticipated by the prior art. As to claims 4 and 5 of the second reissued patent (9 and 10 of the first reissue patent) this same conclusion was reached by the Circuit Court of Appeals for the Sixth Circuit in the Naivette, Inc., v. Bishinger, Herold Bros. Co. v. Philad Co., 61 F.2d 433.

## Validity of Reissue Claims 3, 4, 5, and 6.

Appellant contends that claims 3, 4, and 5 are invalid because reissue claims attempting to recover claim 1 of the original patent (1,622,957) which was rejected by the Patent Office.

■ This question was considered by Judge Byers in Philad Co. v. Rader, D.C., 15 F.Supp. 509. He there pointed out the fact that the claims in the reissued patent were narrower than claim 1 which was rejected upon the first application for the patent. He pointed out that the new claims all were confined to the use of the process in waving hair upon the human head; that the clamps described were restricted to those which gripped and that the nature of the covering applied to the roll during heating was specifically described in the new claims, while in the rejected claim it was referred to generally as "applying covering members to the roll of hair." These claims (3, 4, and 5) of the reissued patent were clearly narrower than the rejected claim 1. [1]

The patentee was not estopped from making these narrower claims, particularly because the claim 1 was rejected upon the patent to Szlanyi, No. 1,400,637, which did not show a method of gripping the hair next the scalp, but did show a pad next the scalp containing a slot through which the

---

[1] Claim 1, canceled and abandoned in the original application for patent 1,622,-957 is as follows: "A method of producing permanent hair waves consisting in dividing the hair to be treated into flat strands, applying clamps to each of said strands near the base, rolling the strands from their outer ends onto a tubular member, said rolling action continuing until the rolled hair is adjacent said clamps, applying covering members to the rolled

hair, and finally applying heat to the covering member."

Claims 3, 4, and 5 of the reissue patent in suit are as follows:

"3. The process of waving hair upon the human head which comprises dividing the hair into flat strands, gripping one strand adjacent the scalp of the wearer with a clamp, winding said strand spirally from its end to near said clamp upon a rod, covering said strand with

strand of hair passed. See John W. Gottschalk Mfg. Co. v. Springfield Wire & T. Co., 1 Cir., 74 F.2d 583.

However, in view of the prior art patents to Popin, No. 1,447,997, and to Szlanyi, No. 1,400,637, the word "clamp" used in defining the first step of the process described in claim 4 should be construed to cover only a clamp having a gripping action.

Appellant contends in its brief that claim 6[2] is void "as a new claim without proper showing or oath" and that it is also invalid for laches and because of intervening rights.

The application for the second reissue patent was based partly upon the necessity for disclaimer arising under 35 U.S.C.A. §§ 65, 71, R.S. §§ 4917, 4922, because of the decision of the Circuit Court of Appeals for the Sixth Circuit (Naivette, Inc., v. Bishinger, 61 F.2d 433), and partly upon the statute permitting the reissue of a patent "whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his invention or discovery more than he had a right to claim as new." 35 U.S.C.A. § 64, R.S. § 4916, as amended May 24, 1928, 45 Stat. 732.

In the oath accompanying the application for the second reissue it is stated that "applicant claimed as his invention or discovery more than he had a right to claim as new, and that the specification is insufficient or defective particularly in the failure to present the subject matter of claims 6 and 10 to 14, inclusive, submitted herewith."

Then follows a statement that the error which constituted the inadvertence, accident, or mistake, was the belief that claims 5 and 6 and 9 to 11, were valid and that until the decision of the Circuit Court of Appeals for the Sixth Circuit wherein claims 5, 6, and 11 were held invalid, and 9 and 10 were held valid, the applicant was not advised of the invalidity of these claims. It is thus apparent that the application was predicated upon the admitted invalidity of claims 5, 6, and 11 of the first reissue patent. But instead of expressly disclaiming claims 5, 6, and 11 the applicant sought a reissue of the patent with these apparatus claims omitted, and eight new apparatus claims substituted, in addition to claim 6 for the process. The apparatus claims were subsequently withdrawn and the second reissue patent was granted, containing the new process claim No. 6.

There was no holding in the decision of the Sixth Circuit Court of Appeals that any process claim of the Mayer patent in suit was invalid. On the contrary, the only two process claims involved were held valid. No necessity arose under that decision for a modification of the process claims and none is suggested in the application. Claim 6 provides for "securing the rod

---

absorbent material containing hair treating solution, next covering said strand and material with a moisture retaining envelope, and then applying heat to said strand.

"4. The process of waving hair upon the human head which comprises dividing the hair into flat strands, surrounding one strand adjacent the scalp of the wearer with a clamp, winding said strand from its end to near said clamp upon a rod, treating said strand with a solution and enclosing the strand in a substantially moisture-tight envelope, covering said envelope with a sectional heater extending to said clamp, and then causing said heater to apply heat to said strand.

"5. The process of waving hair upon the human head which comprises gripping a flat strand of hair adjacent to the scalp with a moisture-tight clamp, winding said strand spirally from its end upon a rod nearly to said clamp, enclosing said strand together with moisture in a moisture retaining envelope, enclosing said strand and envelope within a

heater extending about the same to the clamp, and then causing the heater to supply heat to the strand."

In a petition for rehearing filed in the Herold Bros. Co. v. Philad Co., supra, it was contended that claims 9 and 10 of reissue patent No. 17,393 were invalid because an attempt to recover rejected claim 1. The petition was denied December 16, 1932.

[2] Claim 6 reads as follows: "The process of waving hair upon the human head which comprises dividing the hair into strands, gripping a strand adjacent the scalp of the wearer with the clamp, extending the strand from the clamp so that the filaments of the strand lie substantially in the same plane, winding the strand spirally from its end toward the clamp upon a rod, covering the strand with absorbent material containing hair treating solution and with a moisture retaining envelope, securing the rod against rotation upon the clamp, and then applying heat to said strand."

against rotation upon the clamp" after the hair has been rolled up on the rod. The specification of the patent and of the first reissue did not mention the attachment of the rod with the hair curled upon it to the clamp next the scalp, either for the purpose of preventing the reverse rotation of the rod, or otherwise. In order to sustain the validity of claims 2, 3, 4, and 5 of the patent it is necessary to assume that those familiar with the hair dressing art would know that the hair must be wound upon the rod under tension and that, having been so wound, the tension retained during the heating process. We hold in sustaining these claims that inasmuch as the specifications and drawing disclosed the use of a perforated clamping device with a gripping action which would in fact retain the tension, the claims must be liberally construed in the light of these disclosures and that as so construed were valid. However, in claim 6 the patentee seeks to incorporate, as a step in its method, the making fast of the curling rod, with the hair wound upon it, to the clamp next to the scalp. As there is no basis in the original specification for such a step it could not be validly incorporated into a reissue and for that reason it is void. Union Paper Collar Co. v. Van Dusen, 23 Wall. 530, 557, 23 L.Ed. 128; Michigan Central R. Co. v. Consolidated Car-Heating Co., 6 Cir., 67 F. 121, 126; Mahn v. Harwood, 112 U.S. 354, 395, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed. 665.

In view of this conclusion, it is unnecessary to consider the question of intervening rights which appellant raises in regard to this claim.

### Infringement.

Appellant conceded before the master that it had infringed claims 3, 4, 5, and 6, if valid. It contends that claim 2 of the patent is not infringed. If the other claims are infringed it is of no moment that claim 2 is also infringed. We consider the question only because of the attack on the validity of the other claims which it was admitted are infringed, in view of a possible review of the question of validity by the Supreme Court, and because of the finding of the lower court that claim 2 was infringed.

The appellant's denial of infringement as to claim 2 is based upon the ground that in the process it employs it does not use the two clamps of the claim nor the perforated metallic holder. Claim 2 of the patent is as follows: "The process of producing permanent waves comprising applying a clamp to a strand of hair for holding the same in position for treatment, applying a second clamp for preventing vapor from passing from the outer part of the hair to the roots, rolling the hair on a supporting member, covering the rolled hair with a substantially waterproof covering member, positioning a metallic flexible retainer over said covering member, and finally applying heat to said retainer, said heat being sufficient to penetrate said covering member and the hair while wound and covered."

In place of the two clamps specified by this claim appellant uses but one clamp which, as stated by appellant in its brief, "double grips the hair, with a side passage between the two grips for escape of steam, to prevent its reaching the scalp." Thus two of the steps of the claim are taken simultaneously. But no step is omitted, and the principle of operation and result are not changed. Consequently, infringement is not avoided. Taking two steps at one time is analogous to taking two steps instead of one. The latter has been held to be infringement of a process patent. Sidney Blumenthal & Co. v. Salt's Textile Mfg. Co., D.C., 21 F.2d 470; Fullerton Walnut Growers' Ass'n v. Anderson-Barngrover Mfg. Co., 9 Cir., 166 F. 443.

To prevent the hair from unwinding during heating, appellant uses a spring instead of the metallic flexible retainer disclosed in the patent. The spring serves the same purpose as the clamp in a similar manner. See Walker on Patents, 6th Ed., 488, § 399; Waxham v. Smith, 294 U.S. 20, 23, 55 S.Ct. 277, 278, 79 L.Ed. 733. The use of the spring instead of the clamp is an equivalent step in the process.

Appellant contends that the court erred in holding that the sale and use by appellant of pads with the intent that they be used in practicing the patented invention constituted contributory infringement of the patent in suit and erred in enjoining such sale or use. It is contended by appellant in its brief that the sale of pads was "neither pleaded nor proved as contributory infringement, nor is there any finding with regard thereto. * * *"

In the bill of complaint it was alleged that the defendant sells hair waving devices with intent that they be used in the patented process.

The evidence shows that appellant sells flannel pads with the intention that they be used in following the patented process. And the master's findings, adopted by the trial court, show the sale of machines by the appellant which include such pads.

It is clear that the pleadings, evidence, and findings support the trial court's decree in regard to the sale of pads. The pads are part of appellant's apparatus used and sold with intent that they be used in practicing the patented process. It does not appear that they are standard articles of commerce and that appellees sought to extend a monopoly to such standard unpatented articles,[3] but rather that the pads are designed and intended by the appellant to be used in co-operation with the other devices in carrying out the patented process and that appellees are seeking only to protect the monopoly given by their patent. We conclude that the lower court committed no error as to the pads.

Appellant assigns as error "that the court erred in adjudicating reissue patent No. 17,393 as good and valid, inasmuch as said reissue patent was neither alleged nor proved to be in existence at the time this suit was brought, or at the time the alleged infringement occurred."

The objection is to the form of the District Court's decree as to those parts wherein the District Court held appellant had infringed the claims of patent No. 17,393 which were identical with the claims of the reissue patent in suit.

There was no error in adjudicating infringement of the superseded first reissue patent. The statute provides, 35 U.S.C. A. § 64, supra: "Such surrender [of patent to be reissued] shall take effect upon the issue of the reissued patent, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent to the extent that its claims are identical with the original patent shall constitute a continuation thereof and have effect continuously from the date of the original patent."

The decree is modified to hold claim 6 of the patent in suit invalid and, as modified, affirmed.

[3] See Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. —, decided by the Supreme Court January 3, 1938; Carbice Corp. v. American Patents Dev. Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819.