## PHILAD CO. v. VANATTA.

### No. 1111—M.

District Court, S. D. California,
Central Division.

June 30, 1939.

Lyon & Lyon and R. E. Caughey, all of Los Angeles, Cal., and Morris Kirschstein, of New York City, for plaintiff.

John Flam, of Los Angeles, Cal., for defendant.

McCORMICK, District Judge.

At the conclusion of the hearing of this suit on the merits, the court, upon the record and in conformity with the decision of the Ninth Circuit Court of Appeals, 1938, in Johnson Co. v. Philad Co., 96 F. 2d 442, held the patent in issue to be valid, and also under the aforesaid binding appellate decision and the evidence here, concluded that claims 2, 3, 4 and 5 of reissue patent No. 18,841 are valid unless at least one of three special defenses interposed in this action, and not considered in the Johnson appeal, has been established. These defenses are, substantially: (1) That the patent in controversy is void under section 4887 of the Revised Statutes, 35 U.S.C.A. § 32; (2) laches, and (3) intervening rights which operate to preclude the grant of equitable relief to plaintiff against this defendant. Under the record before us none of these defenses is sustained.

We think, after a careful review of the record and upon consideration of the briefs filed herein, that except as to the matter of the manufacture and sale of heaters exemplified by plaintiff's exhibit 12 and defendant's exhibits a, b, c, d, e, i and j, the defendant has failed to sustain any right to manufacture or sell curler rods, as exemplified by plaintiff's exhibit 13, or protector clamps as exemplified by plaintiff's exhibit 14. These instrumentalities, or their equivalents, are inherently so designed and constructed, in the light of Johnson Co. v. Philad Co., supra, and as shown by the trade methods in defendant's business, as to constitute the defendant a contributory infringer of the protected process patent in suit.

The evidence shows that split heaters or two part heaters, as exemplified by plaintiff's exhibit 12, were known and described in the art prior to the Mayer basic patent which was the forerunner of the method patent here under consideration; and moreover, the record before us clearly shows

that operators in beauty parlors use the same type of heater interchangeably in both spindle and croquignole methods of permanent hair waving. Under such circumstances, it cannot be held that defendant in merely manufacturing and selling heaters is an infringer of the process claims of the patent here in suit.

We conclude therefore that the extension of the doctrine of contributory infringement so as to preclude defendant from making and selling single heaters wholly dissociated from either protector clamps, such as plaintiff's exhibit 14, or curlers, such as plaintiff's exhibit 13, is not justified in this case. Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819.

The record before us affirmatively shows that the pad as exemplified by plaintiff's exhibit 15 is not one claimed by plaintiff to have been used by defendant. We think that therein there is a distinction from the Johnson case relative to the manufacture or use of pads employed in the process. Pads such as exhibit 15 are shown to have been employed for many purposes in no way connected with the process that is protected by the patents in issue in this action.

Considerable stress is laid by defendant upon a recent decision of the District Court for the Southern District of New York, in The Philad Company v. Lechler Laboratories, Inc., 41 U.S.P.Q. No. 12, p. III (June 17, 1939),[1] which held that there was no contributory infringement in a situation somewhat similar to the one before us. We regard this District Court decision as in conflict with the Johnson decision in the Ninth Circuit Court of Appeals, and of course it is our plain duty to follow the latter.

We think it is sufficient to amplify our decision in this action by entering the following findings of fact and conclusions of law, with directions to solicitors for plaintiff to prepare, serve and present under the rules a decree conformable hereto within ten days from notice of the filing of this decision.

This cause having come on to be heard on the pleadings and proofs, and due consideration having been had, the court finds as follows:

### Findings of Fact

1. Plaintiff, the Philad Company, is a corporation of Delaware.

2. The defendant, Willis N. Vanatta, is a citizen of the state of California and resident of Ontario, California, within the Southern District of California, Central Division, where he has been engaged, under the firm name and style of Vanatta Manufacturing Company, in the manufacture and sale of hair waving equipment and supplies, including protector clamps, curler rods, heaters and pads for croquignole permanent hair waving.

3. The patent in suit herein is for "hair waving method," and relates to a process for permanent hair waving for producing what is known as the croquignole type of permanent wave on the human head.

4. The patent in suit is owned by the plaintiff, the Philad Company aforesaid.

5. Contributory infringement of claims 2, 3, 4 and 5 of the patent in suit is charged, by reason of the manufacture and sale by the defendant of equipment, devices and supplies for use in carrying out the method of the patent in suit.

6. Josef Mayer, the patentee of Reissue Patent No. 18,841 in suit herein, a resident of Karlsbad, Czechoslovakia, originated and invented the process described and claimed in said patent.

7. On the 29th day of March, 1927, Patent No. 1,622,957 was granted to Mayer, which patent contained claims for his process. Thereafter, on the 11th day of March, 1929, Mayer filed an application for the reissue of his original Patent No. 1,-622,957, and Reissue Patent No. 17,393 issued on the 6th day of August, 1929, on said application.

8. Subsequent to the making of his invention, Mayer publicly announced that he had perfected said method for giving such croquignole permanent hair wave, and apparatus and/or devices for carrying out said method.

9. In the latter part of 1925, apparatus for carrying out such process was first brought into the United States by Adolph Kietz, who, shortly thereafter, demonstrated the same in Cincinnati, Ohio, and elsewhere in the United States.

10. On or about the 12th day of October, 1932, in its decision reported in Naivette v. Bishinger, 61 F.2d 433, the Cir-

---

[1] No opinion for publication.

cuit Court of Appeals for the Sixth Circuit sustained the validity of claims 9 and 10 of said Reissue Patent No. 17,393, and held other claims thereof invalid.

11. On or about March 20, 1933, by reason of the holding of invalidity of some of the claims of Reissue Patent No. 17,393, an application was filed for the reissue of said patent, and on May 30, 1933, said second reissue application was granted and Reissue Patent No. 18,841 issued thereon, being the patent in suit herein.

12. Claim 2 of said Reissue Patent No. 18,841 is identical with claim 2 of original Patent No. 1,622,957 and claim 2 of Reissue Patent No. 17,393. Claim 3 of said Reissue Patent No. 18,841 is identical with claim 8 of Reissue Patent No. 17,393, and claims 4 and 5 of said Reissue Patent No. 18,841 are identical with claims 9 and 10 of Reissue Patent No. 17,393.

13. In July, 1933, suit was brought by The Philad Company in this court against The Johnson Company, Inc., for contributory infringement of claims 2, 3, 4, 5 and 6 of said Reissue Patent No. 18,841, and in said suit, by interlocutory decree dated January 8, 1937, all of said claims were held valid and infringed.

14. Thereafter, an appeal was taken by The Johnson Company, Inc., from said interlocutory decree to the Circuit Court of Appeals for the Ninth Circuit. This appeal duly came on for hearing and was decided by said Circuit Court of Appeals on or about the 4th day of May, 1938. In its decision 96 F.2d 442, the Circuit Court of Appeals for this Circuit sustained the validity of claims 2, 3, 4 and 5, but held claim 6 invalid.

15. Thereafter, on or about May 20, 1938, the plaintiff duly filed in the United States Patent Office a disclaimer of said claim 6.

16. The defendant, Willis N. Vanatta, subsequent to the issuance of said Mayer Reissue Patent No. 17,393 and prior to the commencement of this suit, within the Southern District of California, Central Division, has manufactured and sold curler rods, as exemplified by plaintiff's exhibit 13, protector clamps, as exemplified by plaintiff's exhibit 14, and hair waving pads, intended and so constructed as to be combined for use and so actually used by purchasers thereof in practicing the process of said claims 2, 8, 9 and 10 of Reissue Patent No. 17,393, and claims 2, 3, 4 and 5 of Reissue Patent No. 18,841.

17. The defendant has manufactured and sold heaters, exemplified by plaintiff's exhibit 12 and defendant's exhibits a, b, c, d, e, i and j herein. All of such heaters manufactured and sold by defendant are suitable for, operable with and commercially used in spiral or spindle methods of permanent hair waving, as well as in croquignole methods, or the protected process of the patent in suit.

18. The defendant has abandoned the manufacture of hair waving pads, and the output of such pads was so meager and the pads are so inconsequential in the protected process that no injunction should be granted against defendant by reason of the manufacture or sale of hair waving pads.

19. The process described and claimed in said Reissue Patent No. 18,841 constitutes a step in advance in the croquignole permanent hair waving art, and is of commercial importance.

20. A large number of hair waving manufacturers have become licensees under the patent in suit and have manufactured and sold heaters, protector clamps, curler rods and pads for carrying out the patented process in great quantities.

21. The protector clamps and curler rods exemplified by the devices in evidence herein were not standard articles of manufacture at the time of the advent of the Mayer invention of the patent in suit. These devices are all specially designed and constructed for carrying out the steps of said process, and came into being and their manufacture and sale was initiated and made necessary by the advent of said patented process.

22. Upon the trial of this case the defendant offered no better or more pertinent prior art relating to the process or method of the patent in suit than that considered by the Circuit Court of Appeals for the Ninth Circuit, in their decision on appeal aforementioned.

23. It was well known in the art that, in order to produce a permanent wave on the human head, no matter of what type, whether spiral or croquignole, the hair had to be wound under tension and maintained under tension while being heated.

24. The clamp designated by numeral 2 in the specification and drawing of the patent in suit has, for one of its functions, the gripping of a flat strand of hair so tightly as to prevent movement of the filaments of the strand relative to one another,

to uniformly distribute the tension and take the pull from the scalp as the strand is being wound under tension. .

25. The clamp 2 shown in Fig. 5 of the drawing and described in the specification of the patent in suit is so constructed mechanically as to be inherently capable of gripping a flat strand of hair adjacent to the scalp, in such manner as to take the pull off the scalp, prevent movement of the hair filaments relative to one another, and distribute the pull uniformly as the strand of hair is being wound under tension.

26. The perforated aluminum clamp designated by number 25 in the specification and drawing of the patent in suit has for its function and is mechanically so constructed as to be resiliently snapped over the wound curl with the absorbent material and moisture tight coverings and prevent the wound strand from unwinding.

27. The perforated aluminum resilient clamp 25, shown in Fig. 6 and described in the specification of the patent in suit, is so constructed mechanically as to be inherently capable of being snapped over the wound and covered strand of hair and to keep the same from unwinding.

28. The devices sold by The Johnson Company, Inc., and held to infringe claims 2, 3, 4 and 5 of the patent in suit by the interlocutory decree in the Philad-Johnson case aforementioned, which decree was affirmed by the Ninth Circuit Court of Appeals as aforesaid, were sold to the Johnson Company by one Ernest Baum, who had the same manufactured for him by Willis N. Vanatta, the defendant herein.

29. The defendant's devices herein, exemplified by plaintiff's exhibits 12 (heater), 13 (curler rod) and 14 (protector clamp) aforementioned, are substantially identical in construction with the corresponding devices held to infringe in said Philad-Johnson case.

30. The following language in the opinion of the Circuit Court of Appeals for the Ninth Circuit in the Philad-Johnson case aforementioned is applicable to defendant's devices charged as infringements herein, to-wit [96 F.2d 446]:

"In place of the two clamps specified by this claim appellant uses but one clamp which, as stated by appellant in its brief, 'double grips the hair, with a side passage between the two grips for escape of steam, to prevent its reaching the scalp.' Thus two of the steps of the claim are taken simultaneously. But no step is omitted, and the principle of operation and result are not changed. Consequently, infringement is not avoided. Taking two steps at one time is analogous to taking two steps instead of one. The latter has been held to be infringement of a process patent. Sidney Blumenthal and Co. v. Salt's Textile Mfg. Co., D.C., 21 F.2d 470; Fullerton Walnut Growers' Ass'n v. Anderson-Barngrover Mfg. Co., 9 Cir., 166 F. 443.

"To prevent the hair from unwinding during heating appellant uses a spring instead of the metallic flexible retainer disclosed in the patent. The spring serves the same purpose as the clamp in a similar manner. See Walker on Patents, 6th Ed., 488, § 399; Waxham v. Smith, 294 U.S. 20, .23, 55 S.Ct. 277, 278, 79 L.Ed. 733. The use of the spring instead of the clamp is an equivalent step in the process."

31. In the latter part of 1928, the defendant entered into an arrangement with said Ernest Baum to manufacture for him protector clamps, curler rods and heaters, such as exemplified by plaintiff's exhibits 14, 13 and 12 respectively. The defendant was to sell all his output to said Baum and to no one else.

32. This arrangement continued to 1932, when the relations between Baum and Vanatta were severed.

33. In the latter part of 1932 or early in 1933, Mr. Kietz, plaintiff's president, visited defendant's factory. At that time, Vanatta had discontinued manufacture of said devices. Kietz came to Vanatta as an officer of The Realistic Permanent Wave Machine Company, an Ohio corporation, licensed under the patent in suit. Kietz had heard that the arrangement between Vanatta and Baum had been discontinued and offered to buy Vanatta's dies for the purpose of putting out a cheaper Realistic machine. Vanatta refused to sell.

34. In March, 1933, the defendant Vanatta entered into an agreement with the Duart Manufacturing Co., Ltd., one of plaintiff's licensees, under the patent in suit, to manufacture Duart's licensed croquignole equipment. This arrangement lasted only a few weeks.

35. In the letter, plaintiff's exhibit 19, setting forth said arrangement, the defendant Vanatta acknowledged validity of the plaintiff's so-called Realistic patents.

36. On June 25, 1933, the defendant made a written application to plaintiff for a license under plaintiff's patent. On July 8, 1933, said application was refused.

37. The defendant nevertheless proceeded to manufacture and sell croquignole devices like those charged to infringe herein, and on February 10, 1934, plaintiff sent the notice of infringement to the defendant, in evidence as plaintiff's exhibit 20. The defendant nevertheless continued to manufacture and sell said devices.

38. This present suit was commenced by plaintiff against the defendant on February 11, 1937, one month and three days after the interlocutory decree was made in the Philad-Johnson case, holding claims 2, 3, 4, 5 and 6 of the patent in suit herein valid and infringed, by the devices which this defendant had manufactured for Baum.

39. Baum undertook the defense of the Philad-Johnson suit, and the interlocutory decree in said suit contains the following provision: "That the devices and apparatus used and/or sold by the defendant were manufactured by Ernest Baum, also trading under the firm name and style of Ernest Baum Products Co., of Los Angeles, California, from whom the defendant purchased said devices, and who assumed the defense of and actually defended this cause, and that this decree shall bind said Ernest Baum and/or Ernest Baum Products Co. as to validity and infringement, in the same manner and with the same force and effect as if said Ernest Baum and/or Ernest Baum Products Co. were actually parties-defendant herein."

40. The patentee Mayer filed an application for patent in Great Britain on February 4, 1925, with a specification and drawings a certified copy of which is in evidence as Schedule A of plaintiff's exhibit 22.

41. The original application from which original Patent No. 1,622,957 issued as a division was filed by the patentee in the United States on March 19, 1925. Upon examination of said original application, the Patent Office required division, and such divisional application was filed on September 14, 1926, and matured into said original Patent No. 1,622,957.

42. The original application filed in Great Britain as aforesaid and the original U. S. application aforementioned were identical, the specification of said Schedule A and the specification of said original U. S. application being identical word for word, and claims 1 and 2 being identical word for word.

43. During the prosecution of the British application, a rewritten specification was filed on or about April 26, 1926, in substitution of the specification Schedule A. and a certified copy of this substituted specification is in evidence as Schedule B of plaintiff's exhibit 22.

44. The issued British Patent No. 251,688 corresponds word for word with said Schedule B, and substantially the same amplifications in the drawings and description in said Schedule B were made when the U. S. divisional application aforesaid was filed.

### Conclusions of Law

I. Reissue Patent No. 18,841 is good and valid in law, as to claims 2, 3, 4 and 5 thereof.

II. The Philad Company, a Delaware corporation, is the owner of said patent.

III. The defendant, Willis N. Vanatta, subsequent to the issuance of said Mayer Reissue Patent No. 17,393 and prior to the commencement of this suit, has manufactured and sold curler rods and protector clamps intended and so constructed as to be combined for use and so actually used by purchasers thereof in practicing the process of claims 2, 8, 9 and 10 of said Reissue Patent No. 17,393 and claims 2, 3, 4 and 5 of said Reissue Patent No. 18,841, in infringement of said reissue patents and said claims thereof.

IV. The defendant in manufacturing and selling accused heaters as exemplified by plaintiff's exhibit 12 and defendant's exhibits a, b, c, d, e, i and j has not infringed the patent in suit or any of the claims of said patent in suit, and defendant is free to make and sell the accused devices exemplified by plaintiff's exhibit 12 and defendant's exhibits a, b, c, d, e, i and j.

V. The defense of laches has not been sustained.

VI. The defendant has no intervening rights, because he has from 1928 continuously to date infringed claim 2 of original Patent No. 1,622,957 and claim 2 of Reissue Patent No. 17,393 and claim 2 of Reissue Patent No. 18,841.

VII. The defense under section 4887 of the Revised Statutes has not been sustained.

VIII. Plaintiff is entitled as against the defendant to a permanent injunction, restraining him, his agents, servants, employees, workmen, confederates and assigns from infringement of Reissue Patent No. 18,841.

IX. Plaintiff is entitled as against the defendant to an accounting of the profits, gains and advantages made by him by reason of his infringement of Reissue Patents No. 17,393 and 18,841.

X. Neither plaintiff nor defendant is entitled to costs.