**DUART MFG. CO., Limited, v. PHILAD CO.**

No. 96.

District Court, D. Delaware.

Dec. 7, 1939.

Clarence O. McKay (of Bacon & Thomas), of Washington, D. C., and Josiah Marvel, Jr., (of Marvel, Morford & Logan), of Wilmington, Del., for plaintiff.

A. J. Hudson, of Cleveland, Ohio (of Kwis, Hudson & Kent), of Cleveland, Ohio, and Herbert L. Cohen, of Wilmington, Del., for defendant.

NIELDS, District Judge.

Motion to dismiss complaint pursuant to rule 12(b) (6) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The grounds of the motion are: (1) The petition fails to state a claim against defendant upon which relief can be granted; (2) the petition, paragraphs 1 to 20 inclusive, fails to state a justiciable cause of action under the declaratory judgment statute, Jud.Code § 274d, 28 U.S.C.A. § 400; and (3) the petition, paragraphs 21 to 24 inclusive, fails to state a cause of action wherein equity will enforce specific performance of a contract, plaintiff itself being in default under the contract, which is terminable by defendant on notice under certain conditions.

Plaintiff, Duart Manufacturing Co., Ltd., is a California corporation having its principal place of business in San Francisco, California. Defendant, The Philad Company, is a patent holding company incorporated in Delaware. It is not engaged in any manufacturing operations. It is the owner of some twenty odd patents relating to permanent hair waving.

The defendant licenses under its patents manufacturers of devices such as hair clamps, hair curler rods, and electric hair curler heaters of a special design which are required in connection with the giving to human hair of the socalled Croquignole permanent wave.

Plaintiff is one of defendant's licensees. Among the patents licensed under defendant's contract with plaintiff is one granted to Josef Mayer, Reissue No. 17,393, dated August 6, 1929. Since that date it has been again reissued as Reissue No. 18,841. This is a method patent. The practice of the method results in giving a Croquignole permanent wave to human hair. The remaining patents licensed by Philad relate to apparatus or devices useful in practicing the method of the Mayer patent. The apparatus manufactured by Philad's licensees is sold through jobbers to operators of beauty parlors and is used by such operators in giving the Croquignole permanent hair wave.

The direct licensees of defendant being manufacturers of apparatus do not themselves directly engage in practicing the process of Croquignole permanent hair waving as set forth in the Mayer reissue patent. By the license agreement between defendant and its licensees, such licensees

are empowered to extend to the purchasers of Croquignole equipment the right to practice the Mayer Croquignole permanent hair waving method by the use of the apparatus which the licensees sold.

The license agreement between plaintiff and defendant specifies the royalty payments to be made to defendant for the manufacture and sale by plaintiff of Croquignole hair waving machines, protector clamps, curlers and hair waving heaters, sets forth a schedule of minimum prices and maximum trade discounts and limits the number of such licensees.

The validity of the Mayer patent was sustained by the Circuit Court of Appeals for the Sixth Circuit in October, 1932. Naivette, Inc. v. Bishinger, 61 F.2d 433. In that case the defendants were sued as contributory infringers because of their manufacture and sale of clamps, curler rods and electric heaters. July 7, 1933, shortly after this decision, the license contract between plaintiff and defendant was executed. Plaintiff operated under the license agreement with defendant and paid royalties to defendant on sales of protectors, curlers, heaters and stands until about February, 1939, since which date plaintiff has made no further royalty payments to defendant and has held such payments in abeyance.

May 4, 1938 the case of Johnson Co. v. Philad Co., 96 F.2d 442, was decided by the Circuit Court of Appeals for the Ninth Circuit. The defendant was a manufacturer of flannel pads so designed that practically their only use was for the purpose of enabling a purchaser of equipment to give a Croquignole permanent hair wave by the method of the Mayer reissue patent. The court, holding that there was contributory infringement, said: "The pads are part of appellant's apparatus used and sold with intent that they be used in practicing the patented process. It does not appear that they are standard articles of commerce and that appellees sought to extend a monopoly to such standard unpatented articles, but rather that the pads are designed and intended by the appellant to be used in co-operation with the other devices in carrying out the patented process and that appellees are seeking only to protect the monopoly given by their patent."

Johnson Co. v. Philad Co., 9 Cir., 96 F.2d 442, 447.

Subsequent to this decision defendant brought suits in the United States District Court for the Southern District of New York against several defendants. The cases were heard together. Defendants were charged with contributory infringement involving the unlicensed manufacture of apparatus and devices which were only useful and intended for use in practicing the method of the Mayer reissue patent. In dismissing the complaint, the court said: "From all the evidence and exhibits in this case it would seem to indicate to the court that the plaintiff is attempting to extend its monopoly under the Mayer patent to unpatented articles, equipments, or furnishings in connection with their process and not within the scope of their monopoly. From the briefs furnished by both sides and in the face of the Carbice and Leitch cases,* the court has its doubts whether the defendants could be charged with contributory infringement." Philad Company v. Lechler Laboratories, Inc.[1]

Thereafter the Circuit Court of Appeals for the Second Circuit affirmed the above decision. 107 F.2d 747.

March 9, 1939 plaintiff served upon defendant the following notice:

"Mr. Davis has referred to me the memorandum decision of the Court in Philad v. Continental et al. [Philad Co. v. Lechler Laboratories] and has asked me to advise Duart concerning the effect of this decision upon the Duart—Philad license agreement.

"In advising Duart on this matter, I have pointed out that the decision is in conflict with the decision in Philad v. Johnson, and that if sustained by your Appellate Court, the question of contributory infringement will probably be reviewed by the Supreme Court. Also I have stated that in my opinion this adverse decision affects the scope of the patent monopoly, although it is not a decision of a Court of last resort.

"While the matters referred to above would seem to have no immediate effect upon the Philad—Duart contract, a more serious situation is involved. According to my interpretation, if the decision of Philad v. Continental is correct, then Philad, Duart, and other licensees are

---

* Carbice Corp. v. American Patents Dev. Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L. Ed. 371.

[1] No opinion for publication. Oral decision only.

guilty of acts in restraint of trade, in violation of the amended Clayton Act, 38 Stat. 730. I make this statement because the decision would place all of the licensees in the position of agreeing to control the price of articles not covered by the patent monopoly. Also there would be some question concerning the legality of the license agreement in that the royalty upon the products, affects price upon the market.

"Duart does not wish to be in violation of the Clayton Act, nor do they wish to risk prosecution by the Government for acts in restraint of trade. The safest procedure to follow appears to be to suspend operation of the contract for the present, as to its questionable features, with the understanding that the parties shall proceed as before upon a reversal of the Continental case. I have reference to those provisions of the contract as to price control and royalty based upon the various products sold.

"Duart is accordingly serving notice that it will take the stand outlined above. In order to show good faith all royalties which would have been regularly paid according to the contract, shall be deposited in a special bank account. The price provisions of the contract shall be deemed suspended, although Duart has no intent to cut prices at the present time."

After repeated demands by defendant that plaintiff pay its royalties under the contract had been ignored, defendant gave the following notice to plaintiff:

"On behalf of the Philad Company, notice is hereby given of cancellation of the license agreement dated July 7, 1933, and amendments thereto, by and between the Philad Company and Duart Manufacturing Company, Ltd., in accordance with the provision of said contract, as set forth in paragraph 16 thereof.

"The reason for the cancellation of this contract is that the Licensee has failed to pay the royalties due, as provided in said license contract, although demand for the payment of said royalties has been made by Licensor.

"The foregoing action is taken in accordance with the resolution of the Board of Directors of the Philad Company."

With this situation confronting it plaintiff comes to this court stating in its complaint: "19. That Plaintiff, Duart Manufacturing Company, Ltd. is at a loss to know what course to pursue in connection with the aforesaid agreement with Defendant, particularly in that continuance under said agreement may involve violations of Federal laws against monopolies in restraint of trade, or the royalties which might be due and payable to Defendant, Philad Company. Plaintiff is further at a loss to determine the status of royalties previously paid by it to Philad Company, all or a part of which royalties may have been paid with respect to articles not properly within the monopoly of said Mayer Reissue Patent No. 18,841."

Plaintiff prays: For a declaratory judgment respecting the validity of the license agreement; for a declaratory judgment specifying the rights and duties of the parties respecting royalty payments; and specifying plaintiff's right to royalties paid prior to February, 1939.

■ To enable the court to afford plaintiff relief there must be a justiciable controversy. A "justiciable" controversy is such a question as may properly come before a tribunal for decision.

Here plaintiff has failed to state a justiciable controversy between the parties. Plaintiff declares that it is at a loss to determine whether the license agreement with defendant is or is not valid. It requests no definite finding or decree from the court but merely requests an advisory opinion.

■ The courts of California and New York take opposite views respecting the Mayer reissue patent. The California court holds that manufacturers of utensils are contributory infringers and the New York court holds that they are not infringers. Where there is such diversity of ruling the Supreme Court alone can settle the controversy. A declaratory judgment of this court respecting such contributory infringement would be wholly ineffective. It is an accepted rule that when the declaratory relief sought will not be effective in settling the controversy the court may decline to grant it.

■ Defendant contends that plaintiff's petition fails to state a cause of action justiciable under the declaratory judgment statute. At no place in the complaint does plaintiff take the position that the license contract is invalid and that defendant is attempting to force the plaintiff to perform an illegal or invalid contract. If plaintiff considers the contract invalid and illegal plaintiff would have a right to come into

court and ask that the contract be annulled on that ground. This would present a justiciable issue. But plaintiff does not come into court under any such circumstances. Plaintiff simply declares it "is at a loss to know what course to pursue" and solicits from the court an advisory opinion. In paragraph 19 plaintiff also states "plaintiff is further at a loss to determine the status of royalties previously paid by it" to defendant. The import of this is clearly to ask this court to render an advisory opinion -as to whether or not the plaintiff has a right to recover royalties previously paid to defendant under the contract.

Although plaintiff admits the receipt of notice of cancellation of the license agreement, yet nowhere in the complaint does plaintiff request the court to set aside defendant's cancellation of the contract.

Upon reading the complaint it is apparent that plaintiff is attempting to straddle the situation. Plaintiff does not ask the court to find that the license agreement with defendant is valid. By so doing plaintiff would admit that it breached the contract by failing to pay the royalties due since February last. Plaintiff does not ask the court for a finding that the license agreement with defendant is invalid. By so doing it might subject itself to prosecution for violation of the anti-trust laws in fixing prices. In this situation plaintiff fails to state the declaratory judgment it desires and in so doing fails to present to the court a justiciable controversy.

The motion to dismiss must be granted.